This case is on file 2-2-0266 Market Square Hospitality LLC v. Dixon & Johnson in Market Square County, Colorado. We know that the iHealthy Company went into activity the other day in Hill in his official capacity as President's Business Consultant here in the City of Des Moines at Mount Grant County. We are doing all we can to lead Mr. Scott's Pledge of Allegiance and we know we have to. Thank you. Mr. Poolberg, you may proceed. May it please the Court, Counsel. My name is Seth. I represent the City of Zion. In this capacity, I represent Albert Hill, the Mayor of the City of Zion and the Chairman of the Commission and the Zion Local Liquor Commission. The City Liquor Commission also appealed, but they have declined to file a brief, so we're flying solo here. We're here to determine whether Cali's violated the term of its Class B liquor ordinance. And we've been dealing with terms of the ordinance back to when this whole thing started. And it's our position that the Class B license, which provides that, authorizes retail sale of alcohol and liquor for consumption on the premises, only in hotels, in restaurants with 50 seats or more, but only at tables during the period when patrons are offered a complete meal, is clear. And the intention is, there in the ordinance, the words mean what they say. Before you go on, whose decision are we reviewing, Mr. Kummer? Reviewing? That's a good question. I believe under the Kaler case that it's clear that we're reviewing, we're going back to the Liquor Commission. And the State Liquor Commission originally filed in favor of or upheld the City of Zion's appeal, or the local commissioner's decision. So when the rehearing was filed, there was a two-to-two tie vote of the Liquor Commission, so that ruling stood from before. So we look back there. We don't look to the trial court under the case law. The trial court, you look back to the administrative decision, not the trial court decision. And standard of review, different for different questions here? Yes. So in our opinion, and we've asserted that the standard of review is a little bit different in this case, because of the dispute as to the evidence to the facts. So we think that it's an NFS-weighted evidence standard under, as to the facts, and the law is a de novo review for the court. So the facts against the manifest weight of the evidence for law de novo. Correct. Next question. I think that the facts have to be, in order for it to be a mixed question of law and fact, it's our position that the facts have to be not in dispute, that they have to be admitted, and here they're not. You don't think? I don't think so. I think that we're in dispute. We say that there's 36 chairs that are there. They say there were 50. There's a dispute? You agree there's 50 chairs. We agree there's 50 chairs. I mean, we've got the pictures. The pictures in the diagram are not in dispute, correct? No, we don't. We don't dispute that those are the pictures in the diagram, but that's not, they weren't taken on the day that the deciding police officer was there. So let me ask you this. Do you have to order, and these are questions that are a little confusing in my mind. First of all, Zion adds something to the effect that the seats have to be comfortable, or you have to be seated comfortably. Where is that in the 56, 56 for the B license? Where does it say the seats have to be comfortable? I don't, it clearly doesn't say that the seats have to be comfortable, but I think that the seats have to be usable so that somebody can sit and have a meal. Do you have to have a full meal if you're going to order a drink? No. You do not. So you could just order a drink if you'd like? Yes. Okay. Yes, I think that the ordinance doesn't require that you're eating and drinking at the same time. It doesn't say that. Well, then that doesn't undercut your argument, though, because the ordinance says it's authorized the sale of alcoholic beverages in restaurants or 50 seats or more, but only at tables during that period where patrons are offered a meal. So you said offered a meal. So do they have to even be at the tables? I mean, can't they be sitting in the chair? Is there anything that says they can't eat in a chair? Or stand in a chair. Or stand. Does the ordinance equate seat with a usable or comfortable seat or table? This is a chair, doesn't it? Well, I think that if we look at this as a whole, when this all came down and started, the license holder, the diagram that you referred to, chose 50 seats and chairs. Right. Because they understood that you have to be able to eat and feel when you're drinking, when you're ordering alcoholic liquor, too. So I think that that's really what we're looking at is that people think that, yes, we have 50 chairs and tables for them so that they can have a complete meal. Or maybe they think all we need is 50 chairs pursuant to the statute. It doesn't say everybody has to have a complete meal, so let's put some chairs around the decorations or around areas where you really can't have a complete meal because the statute doesn't say you need a complete meal. Well, it doesn't, but that's not what they did here. What do you mean that's not what they did here? They didn't have seats just around the room and little groupings of seats. They put tables because they understood this to mean we have to eat here, that if people order something to eat, they have to be able to sit down. There weren't extra tables. There's no diagram, there's no evidence in the record that there were extra seats around the room. The statute's pretty clear, the ordinance, that you have to have the seats at tables. You can't have just seats laying around. They have to be at tables. So there have to be at least 50 seats. The seats have to be at tables. And then the other one is you can only serve liquor during periods when they're offered a full meal. Now, that's a temporal thing. It's not a placement thing. I mean, you can serve drinks. I mean, it can only be during that period. But it doesn't necessarily say that everybody has to have a meal, everybody sitting at those seats has to have a meal. Everyone sitting at those seats has to be able to comfortably eat a meal. I mean, if that's what the intent of this ordinance is, it ought to be redrafted because that's not what it says, plain language of it at least. Isn't it a temporal thing? I think that's part of it. I think the temporal is definitely part of it. At the time when they're offered a complete meal, it is part one. But part two is that the intention here was, as far as I understand it, was that this is a restaurant, not a bar. So that's what they were trying to do. They defined bars differently. So that was why they wanted people to come in, sit down, and eat, and not be standing around, not doing something differently.  A restaurant is defined in the ordinance also as a place. Your argument below, and your argument on appeal, if I understand it correctly, correct me if I'm wrong, is that they violated the letter of this ordinance, not the spirit of the ordinance. I don't think I can argue in good faith that they violated the spirit of the ordinance to you. Because I think that's... The spirit trumps only if the letter ends to an absurd result. Right. So how do you argue that the letter of the law here doesn't lead to an absurd result? I don't think it does. I don't think it leads to an absurd result because of the fact that the tables are the key with the chairs. They go together, in my opinion. The tables and the chairs go together with the meal. We've got to read this in its entirety and not just small parts of this. And that we prepared the ordinance when we went to... When this all started out, the license holder prepared the document to show that they had a restaurant. And so they prepared this diagram that they submitted into evidence showing this is a restaurant.  And so people need to be able to eat those meals and be served the meals at the same time just having chairs. So I think that... Well, these chairs were not just all over the middle of the room. Weren't they at least arguably tied to a table? I mean, there may have been stuff on the tables. But weren't they around tables, in a manner of speaking? Yes, around tables. But even in the pictures that they submitted, there's a person working at it. They're a tablet or a laptop computer. And it's literally in front of the chair next to her. Because they have eight chairs around this small four-by-four table. So that really there's no way that somebody could have sat next to that person and eaten. Or it would be very uncomfortable for them to be able to do that. But it doesn't say the seat has to be a comfortable seat, does it, or a comfortable area? I mean, if you're going with the plain language, I mean, I agree with Justice Burke, maybe it could have been made a little clearer. I mean, they're going to argue that we technically, quote-unquote, have complied with the law, right? That's what I said. They're going to say, look, we have 50 seats, which is what they've said all along. Our interpretation is that there were 36 seats, and that was the testimony. And those 36 seats were the only ones where somebody could be eaten a complete meal. And that we need 50 places where people could eat a complete meal. But then shouldn't the ordinance say 50 seats where people could eat a complete meal? This says offered a complete meal. Offer is a- It says here at a time when it's offered. Yeah, at a time when it's offered. The result here was a fine only, correct? It was a $1,000 fine. Okay, so they never shut them down? No, no. There was no suspension of licensing. It was a $1,000 administrative fine. And this is a hotel. They also have a banquet facility here? Yes. And so this is where people come from my understanding is when they typically they stay there when they're at the campus. And so they may come downstairs and say, I'm going to get a meal, or, you know, I'm just going to unwind, I'm going to have a drink. The statute, if I'm correct, was intended to preclude this from just being a bar. That's correct. That's correct. The intent was a restaurant. That's why restaurant is defined in the ordinance and bar is defined differently. There's a Class A license that is a retail sales on-premise consumption. So we have different ordinances to deal with this. Zion was a dry community until 2000. They had a local option referendum, and so they tried to define everything in their ordinance in order to strictly regulate this. So that's why we have all these classifications. When the hotel was built and was under construction, that was the intent of putting in this hotel classification for them. Now, the officer testified that only 36 people could eat a meal, but the administrative law judge found that hypothetically it's possible that 50 people could eat meals. They'd just be – they wouldn't be comfortable. But he just said it's possible that people would be crammed around the tables. He said that they would be – yeah, he said they'd be crammed around a table, and I think the other thing he said is that they'd have to be served those meals, not just offering a meal, that the two go together. That's a reasonable interpretation of that – of the ordinance. So it's not – as we celebrate, it's not Thanksgiving with a large extended family where you're just going to sit and laugh. This is – you need to sit down and eat a meal so that everybody – so it is truly a restaurant seating and not just a hodgepodge. I mean, you're arguing the – what you believe the intent of the ordinance is. Well, I think that's part of it. The intent was – is one thing, but then I do think that the ordinance is clearer and provides for it, and I think that's what – when we look back to the interpretations, you know, that those are unreasonable. Yes. What effect does the ALJ's decision have on this? Because you had the local board made a finding. Then it goes off. And we're reviewing the board because the ALJ's determination was upheld by the state board, but only because of the 2-2 – ultimately because of the 2-2 tie, right? Well, first the state board adopted the ALJ's finding. Right. And then it went to the – Then it went to the rehearing. Right. Then there was a petition for the hearing. So the state board's decision, last decision that was a tie, is in favor of upholding the local commission. So are we looking at that – that – to follow up on Justice Shasta's question. Yes. Are we looking at – are we reviewing the first state board decision or are we reviewing the local board's decision? I think that you're reviewing – that's – the Kaler case goes back to – it says you've got to consider the local board, but you're looking at the state commission's decision. That was where the state commission overturned the decision of the local and imposed a revocation as opposed to a suspension, I believe. My question is – because I just want to know how are we supposed to look at the ALJ's decision? I think you look at the ALJ's decision. I understand your question. But you have to look at the ALJ's decision as the last decision that you review. You review the ALJ's decision because that was the one where the state board did vote in favor of it. Okay. I think that when you look at the evidence that they have presented of the tables, their own evidence is the ALJ fund, it doesn't exactly – it doesn't show – You can finish your thought. Those pictures don't show that there's 50 seats that somebody can sit at. The meal service is key in addition to being offered in this case, and we think that the fine of $1,000 was reasonable. The decision of the ALJ is reasonable, a potent local. So thank you. Anything else? No. Okay. Thank you, counsel. You will have time for rebuttal. Mr. O'Donnell, you may proceed. Thank you. Good morning, Your Honors. Good morning. I'd first like to address the issue of the question of what the standard of review is. I believe the standard of review is clearly erroneous for a mixed question of law and fact. I don't think there's one standard of review for the factual question and then another separate standard of review for the legal question. And here we do indeed have a mixed question of law and fact, that being whether or not the seats in the restaurant on the day in question satisfy the ordinance requirement that it be a restaurant of 50 seats or more. That standard is if the historical facts are admitted and the ordinance is undisputed. The ordinance is certainly, the language of it is undisputed. Are the historical facts admitted here? I mean, counsel seemed to indicate there's some factual dispute. Well, I think there's a, the way the evidence was presented, I think there is a factual dispute. Of course, we contend that there are 50 seats located in the restaurant which satisfies that part of the ordinance. Do they have to be usable seats, Mr. O'Donnell? They were usable. Is that what it says? They have to be seats, Your Honor. They don't have to be usable because then that invites another question. Usable for what purpose? So if I have a seat in the restaurant that is usable in order to consume a full meal, that's one question. But if I have a seat that is usable in order to sit and have a cup of coffee or an alcoholic beverage and it's around a table, would it be appropriate to have an alcoholic beverage that's usable for another purpose? Well, if the seat wasn't usable at all, that would make no sense because it's tied into the 50 seats or more. We go on and the ordinance says but only at tables. So the seat has to be usable. Otherwise, why would you tie it into a table? Of course it has to be a seat. A seat is something upon which one can sit. Exactly. I agree, Your Honor. So they had some seats that were, you had knee-high tables with big chairs around. Correct. How does that qualify that it's a usable seat? And Ms. Rogers, who is the hotel manager and is responsible for the restaurant, she testified that actually is one of the most popular tables for two reasons. Because they have several people who frequent the restaurant that are in wheelchairs and they can pull up to that table easily. And there are others who've recently had surgery and they find it very comfortable to sit in the lounge chairs because they can position themselves to make it comfortable. Further to that point, though, let's say hypothetically that that is indeed a cocktail table, one in which there is really no, meals are infrequently, if ever, served. It is still, those seats we maintain still count. It is still a table. It is still the location where alcoholic beverages can be served. And as long as we satisfy the temporal limitation where the alcoholic beverages are served  Are you saying that as long as you have 50 chairs, even if there was no space at a table anywhere within the restaurant where somebody could actually eat a meal, that would still be okay? Because you've got tables and chairs somewhere in there. Would that be what this ordinance was intended for? Yes, with one caveat. To that point, let's say the chair was stacked, was lined up against the wall as opposed to around the table. That would be a table at which, that would be a seat at which one in all likelihood would not eat a complete meal, nor would it be a seat at which an alcoholic beverage can be served because the alcoholic beverages are required to be served at tables with seats. So there are ways to skirt it, but that's not the evidence here. There was no intent to skirt anything here. Are there, according to the city, 36 usable or comfortable seats as they defined it at which a complete meal could be served and consumed? Does the statute say anything about comfortable seats? No, nothing whatsoever, nothing about comfortable or usable or capable of being served and consuming a full meal. That's not stated either. Or offered, when meals are offered. Meals must be available. In other words, the kitchen must be open. That's the temporal limitation on the service of alcohol. There are liquor licenses, and I think we're all familiar with them, where one cannot offer and consume an alcoholic beverage without ordering a complete meal. That is a form of liquor license. That's not this liquor license. This liquor license would allow a patron to come into Cali's and order a drink without any intention and without any effort to order or consume a complete meal, as long as that person was at a seat at a table. Correct, but that's what I'm saying. That's what I wanted to get into this thing about you talking about usable seats. At a seat at a table. So you would agree that the seat is connected to the table requirement. You just can't have 50 chairs in there scattered in the middle of a room with no tables around, right? You actually could, and thereby satisfy the 50-seat requirement, but for what purpose would one do that? Because you're not going to be able to eat a meal at that table, and you're not going to be able to order or consume an alcoholic beverage  So you might satisfy one component of the ordinance, Your Honor, but it would be self-defeating, and that's why I think the ordinance as written works very well. You have the 50-seat limitation. You have the locational limitation of the alcoholic beverages only at tables, and you have the temporal limitation that says you can only serve the alcohol when patrons are offered a complete meal. So that the intent, in your opinion, the intent of that statute is so it doesn't become just an all-out bar? Absolutely. Well, it could if they're not connected to tables. Couldn't it become an all-out bar if you just have the chairs in there, anywhere, and they're not connected to tables? You're saying that would satisfy the ordinance. They don't have to go under a table. You can't have alcohol. You can only have the alcohol at the table. So I'm saying my point, Your Honor, is can I have the 50 seats anywhere? And I would say you could have the 50 seats anywhere lined up against the wall. That would satisfy the 50-seat requirement. But for what purpose? You can't eat a meal at a table along a wall, and the ordinance requires that alcohol only be served at tables. So when you really connect all of the three requirements of the ordinance, it fits the purpose of requiring or allowing alcohol only at a restaurant. It's not going to become a bar. Because remember, the restaurant, as defined in the ordinance, requires that the restaurant be a sanitary kitchen, that it be open, you have food staff, you have foodstuffs, you have places for storage of food. In other words, that investment's got to be made. So it fits the spirit of the law as well. Absolutely. But the argument here is for the letter of the law. I mean, the city's argument that you understand is for the letter of the law, not the spirit of the law. I do, and I think that that, candidly, is the easy part of the analysis. It fits the letter of the law. My point is it also fits the spirit of the law when you take the three components of the requirements and put those pieces together  And it fits. It meets the letter of the law, and it fits the spirit of the law. And the only evidence that was offered were the officers count that there were 36 seats at which one could not consume a full meal, therefore those were not usable. There were 36 that you could. 36 that you could. I misspoke. Thank you, Your Honor. Thank you. 36 where you could. But what he didn't do, he didn't tell us how many other seats there were and why they were discounted. So let's assume for a moment that there were 14 other seats at which one could not consume a full meal, but where one can consume a cup of coffee or an alcoholic beverage. You take that into account, and the ordinance is satisfied both in terms of its letter and its spirit. Were your client's manager who filled in the blanks on the other seats? Absolutely. So you don't have to order a complete meal in order to get a drink. Absolutely not. Somebody might in the restaurant. Yes. And obviously if you're required to maintain a full-service restaurant and all of the attendant components are there, you're going to make that investment for the purpose of making certain people take advantage of it. This hotel also has a banquet facility. It does. Is that a different liquor license? A banquet would be a different liquor license, yes. Yes. The only liquor license violation in question here was attendant to Kelly's, the restaurant coffee shop. Anything else, Your Honors? No. Thank you. Thank you, Mr. O'Donnell. Mr. Puma, Rebond-Morgan. I'm not sure what to say. I think Your Honors has asked similar questions. I would clarify that there are two liquor licenses for this facility. For sure there is a banquet license and also the Class B restaurant license. So they do have two different licenses there. So I would just say that I don't think that just having seats in addition, as Mr. O'Donnell just said, satisfies the restaurant requirement. I think we have to look at both of these together. We have to look at the entirety of the situation and that this has to be a place where food can't be served at 50 seats, not 36 seats or some other number with materials on the table. Do you agree, Mr. Puma, that perhaps a little more specificity in the statute, more to what you're arguing about, may help, may assist? I think that a lot of the cases that you're asking are involving statutes that could have been clearer from criminal statutes to local ordinances to a variety of other things where things could have been drafted better. Sure. Could something have been better? Yes, but I think in looking at the facts of the case and applying the facts to this ordinance, I think that the local commission's decision and ALJ's decision won't reason it. There are a variety of statutes that get amended. We see the books come out every year with new statutes where things are made clearer. Is the city contesting that there were not 50 seats at tables? I'm just talking about seats at tables. I don't think the record says that exactly. The officer testified that he counted 36 what he characterized as usable seats. There's no direct testimony as to the number of seats that were available on that day. We have the testimony of, as Roger said, it was my job. It's always that way, but that's like saying I always lock my house and then you come home and all your stuff is stolen and there's no signs of forced entry, no TV, no electronics. I always lock my doors, but probably on this date it didn't. So we don't know if there were actually 50 seats on the list of the record. But the statute doesn't say usable seats or comfortable seats? No. Nothing like that? No. But if we don't know, let's say the issue is clearly, or let's say we agree with counsel that it doesn't matter if these seats are usable for eating a meal. The issue is really whether or not there were 50 seats at tables. I mean, how does this, the dearth of evidence in the record doesn't help the city here. I mean, the city has to prove the violation, correct? Right. I think that the officer, well, the city has to prove the violation, but we also have to give deference to the decision of the local commission through the ALJ's decision that there weren't, he didn't testify that there were 50 seats. There was no question. Were there 50 seats in the restaurant at tables? No one asked that to my recollection. But I think that the 50- Don't the pictures show that? The pictures weren't on that day. So that was the, well, this is how it always is, and that we don't know that. But the testimony also wasn't, there was merchandise all over the tables. None of the pictures show merchandise on any of the tables and chairs. So I don't think that the pictures necessarily help them on that. So, thank you for your inclusion. Thank you, Mr. Doolittle. The court would like to thank the attorneys for the quality of their arguments here today. This will be taken under advisement and will take a short recess.